UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

STAY YOU, LLC,

                              Plaintiff,

              v.

H&M HENNES & MAURITZ, LP,

                              Defendant.

-------------------------------------------------------X

```
┌─────────────────────────────────────────────┐
│ USDC SDNY                                     │
│ DOCUMENT                                      │
│ ELECTRONICALLY FILED                          │
│ DOC #: _____               │
│ DATE FILED: ____6/15/2022____                 │
└─────────────────────────────────────────────┘
```

20-CV-1396 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

Stay You, LLC ("Plaintiff") filed the above-captioned lawsuit against H&M Hennes & Mauritz LP ("Defendant") for trademark infringement and unfair competition.  Currently before the Court is Defendant's Motion for Summary Judgment.  (Mot., ECF No. 45.)  For the following reasons, in accordance with the Order at ECF 77, summary judgment is DENIED.

**BACKGROUND**

Plaintiff and Defendant are both companies that sell casual clothing.  (Def. Rule 56.1 Statement ¶¶ 2, 3, ECF No. 50.)  Plaintiff sells clothing through its Canada-based website and at in-person events with Plaintiff's owner and principal, Joey Kidney.  (Def. Response to Pl.'s Rule 56.1 Counterstatement of Add'l Material Facts ("Def. Response") ¶¶ 2, 129, ECF No. 67; Def. Rule 56.1 Statement ¶9.)  Defendant sells clothing in stores and online in the United States and Canada.  (Pl.'s Counterstatement to Def. Rule 56.1 Statement ("Pl.'s Counterstatement") ¶¶ 3, 43, 125, ECF No. 58.)

In June 2019, Defendant began a one-month promotion of a limited amount of clothing that it characterized as supportive of the LGBTQI+ pride movement, which it referred to as its

1

Pride Collection.  (*Id.* ¶¶ 33–36.)  Four of the items in Defendant's Pride Collection bore the four-word phrase "Stay True Stay You."  (*Id.* ¶ 41.)

Plaintiff has sold clothing items bearing the two-word phrase "Stay You."  (*Id.* ¶ 2.) Plaintiff owns the registered trademark for "Stay You."  (*Id.* ¶ 167.)

## LEGAL STANDARD

Summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party has the initial burden to show the absence of a genuinely disputed issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party's burden is met, then the nonmoving party must provide evidence to show that there is a genuine, material factual dispute.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986).  "A fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (quoting *Anderson*, 477 U.S. at 248).  A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *McElwee v. County of Orange*, 700 F.3d 635, 640 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 248).  In determining whether there are genuine disputes of material fact, the Court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment."  *Miner v. Clinton Cnty.*, 541 F.3d 464, 471 (2d Cir. 2008) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).  Summary judgment is improper "if there is any evidence in the record that could reasonably support a jury's verdict for the non-moving party."  *Am. Home*

*Assurance Co. v. Hapag Lloyd Container Linie, GmbH*, 446 F.3d 313, 315 (2d Cir. 2006)

(quoting *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002)).

## DISCUSSION

Plaintiff asserts three claims: 1) federal unfair competition pursuant to the Lanham Act, 15 U.S.C. § 1125(a); 2) common law unfair competition; and 3) common law trademark infringement.  (Compl., ECF No. 1.)

Defendant moves for summary judgment on all three of Plaintiff's claims.

## I.      Applicable Law

Claims of unfair competition pursuant to federal and common law and claims of trademark infringement pursuant to common law are analyzed under a two-prong test.  The first prong looks to whether Plaintiff's mark is entitled to protection.  The second looks to whether Defendant's use of the mark is likely to cause confusion among consumers as to the origin of the product.  *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016).

Courts use substantially the same standard for claims of unfair competition pursuant to the Lanham Act, unfair competition pursuant to New York common law, and trademark infringement pursuant to New York common law.  *Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005) (Conner, J.) ("[Pursuant to New York law,] the elements necessary to prevail on causes of action for trademark infringement and unfair competition . . . mirror the Lanham Act claims." (internal quotation marks omitted)); *see Two Hands IP LLC v. Two Hands Am., Inc.*, No. 21-CV-3855, 2021 WL 4437975, at *6 (S.D.N.Y. Sept. 28, 2021) (Koeltl, J.).  The Court thus considers the three claims together.

With respect to the first prong of the test for unfair competition and trademark infringement, a certificate of registration with the U.S. Patent and Trademark Office is prima facie evidence that the mark is protectable. *Lorillard Tobacco Co.*, 378 F. Supp. 2d at 454. In this case, the Court need not address the first prong because it is uncontested that Plaintiff's mark is registered and entitled to protection. (Def. Response ¶ 137.)

The second prong, likelihood of confusion, turns on whether there is "any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the source of the [products] in question." *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004) (quoting *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978)).

Defendant makes two arguments in support of summary judgment: 1) that there is no likelihood of confusion between Defendant's mark and Plaintiff's mark, and 2) that even if there is a likelihood of confusion, Defendant's use of the mark is fair use, constituting an absolute defense to liability. (Def. Mem. in Supp. of Mot. for Summ. J. ("Def. Mem."), ECF No. 48.) The Court addresses each argument in turn.

## II.    Likelihood of Confusion

The material, factual dispute here is whether there is a likelihood of confusion. Likelihood of confusion is a factual question. In the Second Circuit, courts consider the "*Polaroid* factors" to evaluate whether there is a likelihood of confusion. *See Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961). The *Polaroid* factors are: 1) the strength of the plaintiff's mark, 2) the degree of similarity between the plaintiff's and the defendant's marks, 3) the proximity of the products, 4) the likelihood that the plaintiff will "bridge the gap" between the two products, 5) actual confusion between the two marks, 6) the

defendant's good faith in adopting the mark, 7) the quality of the defendant's products, and 8) the sophistication of buyers of the plaintiff's and defendant's products. *See id.* "No single factor is dispositive." *Lopez v. Gap, Inc.*, 883 F. Supp. 2d 400, 419 (S.D.N.Y. 2012) (Engelmayer, J.). Courts focus on the ultimate question of whether consumers are likely to be confused.

### a. Strength of the Mark

The strength of a mark and the degree of protection to which it is entitled are analyzed under four categories of increasing strength and protectability: 1) generic; 2) descriptive; 3) suggestive; and 4) arbitrary or fanciful. *See Estee Lauder Inc. v. Gap, Inc.*, 108 F.3d 1503, 1508 (2d Cir. 1997); *Artisan Mfg. Corp. v. All Granite & Marble Corp.*, 559 F. Supp. 2d 442, 449 (S.D.N.Y. 2008) (Pauley, J.); *BigStar Ent., Inc. v. Next Big Star, Inc.*, 105 F. Supp. 2d 185, 198 (S.D.N.Y. 2000) (Marrero, J.). A generic mark is a common name that describes a kind of product. *Gruner + Jahr USA Pub. v. Meredith Corp.*, 991 F.2d 1072, 1075 (2d Cir. 1993). A descriptive mark is one that conveys an idea of the ingredients, qualities, or characteristics of the product. *Lopez*, 883 F. Supp. 2d at 415. A suggestive mark suggests the product, though it may require thought to grasp its nature. *Id.* An arbitrary mark has a dictionary meaning that does not describe the product, such as Ivory for soap. *Gruner*, 991 F.2d at 1075–76. A fanciful mark is a made-up name, like Exxon for oil. *Id.* at 1076. A mark's strength is examined in the market in which it is used. *Morningside Grp. Ltd. v. Morningside Cap. Grp., L.L.C.*, 182 F.3d 133, 139 (2d Cir. 1999).

Here, the relevant market is casual clothing. Plaintiff has provided evidence to support a finding that the "Stay You" mark is arbitrary or fanciful, thus affording it the highest level of protection. A Marketing Concept Manager for Defendant testified that the term "Stay You" does not mean, is not descriptive of, and is not suggestive of clothing. (Kalipeni Dep. Tr. at 41:13–24,

ECF No. 59.)

Even if a mark is afforded the highest level of protection, its strength may be diminished by extensive third-party use in the relevant market. *Morningside,* 182 F.3d at 139. Defendant has provided evidence of extensive third-party use of the mark "Stay You" by other casual clothing companies, which undermines the strength of Plaintiff's mark. (Def. Rule 56.1 Statement, Exs. 36–85.)

The policing of a mark may affect a mark's strength to the extent that it prevents weakening of the mark's distinctiveness in the relevant market. *Morningside,* 182 F.3d at 139. The parties dispute whether Plaintiff polices its mark. Defendant asserts that Plaintiff has not initiated litigation against any other third parties for the sale of casual clothing items that allegedly infringe the "Stay You" mark. (Def. Rule 56.1 Statement ¶ 99; *see also id.* ¶¶ 54–97; Kidney Dep. Tr. at 44:8–61:13, ECF No. 50-18.) Plaintiff asserts that it has policed its mark by writing to infringers. (*See* Kidney Dep. Tr. at 149:14–151:20; Pl.'s Counterstatement ¶ 66.)

Overall, there is a genuine dispute of material fact as to the strength of Plaintiff's mark.

### b. Degree of Similarity

When considering this factor, courts analyze whether the marks are likely to confuse consumers by looking at 1) the similarity of the marks and 2) how the marks are presented in the marketplace. *Gruner*, 991 F.2d at 1078.

Regarding the first inquiry, here, the similarity of the marks is unlikely to confuse consumers, because the parties used different phrasing. Defendant's products bore the four-word phrase "Stay True Stay You." (*See* Def. Response ¶ 26). Plaintiff's products bore the two-word phrase "Stay You." (*Id.* ¶ 2.) Defendant asserts that it never used "Stay You" as a standalone phrase. (Kalipeni Decl. ¶ 16, ECF No. 50-3.) Plaintiff disputes this assertion. (Pl.'s

Counterstatement ¶ 183.)

Regarding the second inquiry, the hangtags on Defendant's clothing decrease the likelihood of confusion of the two marks.  In the clothing market, hangtags inform the average consumer that the item originated with the seller whose name appears on the hangtag.  *Lopez*, 883 F. Supp. 2d at 421; *see Nabisco, Inc. v. Warner–Lambert Co.*, 220 F.3d 43, 47 (2d Cir. 2000).  Plaintiff does not dispute that the products in Defendant's Pride Collection, including the products with "Stay True Stay You," bore a hangtag displaying Defendant's name.  (*See* Kalipeni Decl. ¶ 15.)

Because the parties' marks differ in overall phrasing, and because Defendant's products were labeled with Defendant's name, the degree of similarity factor favors Defendant.  A reasonable trier of fact could, however, conclude that the marks are similar because the items are found in the same context (casual clothing) and both parties' marks include the phrase "Stay You."

> **c.   Proximity of the Products**

The inquiry into proximity of the products concerns whether and to what extent the products compete with each other.  *Brennan's, Inc. v. Brennan's Rest., LLC*, 360 F.3d 125, 134 (2d Cir. 2004).  When examining this factor, courts primarily consider market proximity and geographic proximity.  "Market proximity asks whether the two products are in related areas of commerce and geographic proximity looks to the geographic separation of the products.  Both elements seek to determine whether the two products have an overlapping client base that creates a potential for confusion."  *Id.*

Because Plaintiff and Defendant are both in the business of selling casual clothing, the

products are in close market proximity.  (*See* Def. Rule 56.1 Statement ¶¶ 2, 3.)

The products' geographic proximity, however, is disputed.  Plaintiff sells its products through its Canada-based website and at in-person events.  (Def. Response ¶¶ 2, 129.)  Plaintiff does not specify where the in-person events are held.  Whereas it is undisputed that certain products in the Pride Collection were available in-store in the United States (Def. Response ¶ 44), it is disputed whether the Pride Collection was available online in the United States and Canada, or only in the United States (*see id.* ¶ 43).

A reasonable trier of fact could find either way on the proximity of the products.

### d.  Likelihood of Bridging the Gap

"Bridging the gap refers to the likelihood that the [plaintiff] will enter the [defendant's] market in the future, or that consumers will perceive the [plaintiff] as likely to do so."  *Star Indus., Inc. v. Bacardi & Co.*, 412 F.3d 373, 387 (2d Cir. 2005).  A plaintiff's intention to bridge the gap "helps to establish a future likelihood of confusion."  *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 874 (2d Cir. 1986).  To bridge the gap, the plaintiff must demonstrate an intent to target the defendant's consumers and provide evidence that potential consumers know of that intention.  *Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC*, 335 F. Supp. 3d 566, 590 (S.D.N.Y. 2018) (Carter, J.); *accord Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 582 (2d Cir. 1991).

Although Plaintiff and Defendant both operate in the market of casual clothing, Plaintiff views Defendant's consumer base as distinct from its own.  (*See* Pl. Opp'n to Def. Mot. at 21, ECF No. 56.)  Significantly, Plaintiff has not demonstrated an intent to target Defendant's consumers, nor has Plaintiff provided any evidence suggesting that an average consumer would

think it likely to do so.

Accordingly, this factor favors Defendant.

### e. Actual Confusion

Actual confusion refers to "consumer confusion that enables a seller to pass off his goods as the goods of another." *Sports Auth., Inc. v. Prime Hosp. Corp.*, 89 F.3d 955, 963 (2d Cir. 1996) (quoting *W.W.W. Pharm. Co. v. Gillette Co.*, 984 F.2d 567, 574 (2d Cir. 1993)).  Evidence of actual confusion, such as consumer surveys, supports a finding of a likelihood of confusion, but actual confusion need not be shown to prevail pursuant to the Lanham Act.  *Guthrie*, 826 F.3d at 44–45.

Plaintiff asserts that an "unprecedented drop in sales correlated to the period of infringement" proves actual confusion.  (Pl. Opp'n to Def. Mot. at 21.)  Defendant promoted the Pride Collection for the month of June 2019.  Plaintiff contends that its sales from June to August 2019 were down by over fifty-six percent compared to June to August 2018.  Defendant disputes the financial analysis upon which Plaintiff's figures are based, but provides no contrary evidence.  (Def. Response ¶ 174.)  Despite Plaintiff's assertion that "[t]his was clearly the result of regular Stay You customers seeing cheap goods at H&M in connection with the Stay You brand," (Pl. Opp'n to Def. Mot. at 21), the correlation does not establish that the Pride Collection caused Plaintiff's decline in sales.

There is a genuine dispute of material fact as to this factor.

### f. Good Faith

This factor focuses on whether a defendant, in adopting the mark, intended to capitalize on plaintiff's goodwill by creating confusion between the products.  *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 88 (2d Cir. 2020); *Lopez*, 883 F. Supp. 2d at 423.

Defendant has provided sufficient evidence that it did not use the mark with an intent to

capitalize on Plaintiff's goodwill by creating confusion.  (*See* Kidney Dep. Tr., at 144:23–145:2.)  Plaintiff has failed to provide contrary evidence.

First, Defendant labeled its products with its own name.  (Kalipeni Decl. ¶ 15.)  Plaintiff does not dispute that the products in Defendant's Pride Collection, including the products with "Stay True Stay You," bore a hangtag displaying Defendant's name.  (*See id.*)  The prominent display of Defendant's own name supports a finding of Defendant's good faith.  *Cosmetically Sealed Indus., Inc. v. Chesebrough–Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997).

Second, "the phrase 'Stay True Stay You' was chosen because it communicates the message of individuality, diversity, self-confidence, and equality within the LGBTQI+ community."  (Kalipeni Decl. ¶ 8.)  Defendant identified the phrase "Stay True Stay You" using a Pinterest search of inspirational messages related to the LGBTQI+ community.  (*Id.* ¶ 9.)  Thereafter, Defendant's Marketing Concept Manager asked Defendant's legal team "if there was proper usage for a campaign" using the four-word phrase "Stay True Stay You," and "was told there was."  (Kalipeni Dep. Tr. at 39:18–40:7.)

This factor favors Defendant.

### g.  Quality of the Product

This factor requires courts to ask "whether the [plaintiff's] reputation could be jeopardized by virtue of the fact that the [defendant's] product is of inferior quality."  *Arrow Fastener Co. v. Stanley Works*, 59 F.3d 384, 398 (2d Cir. 1995).

Plaintiff has said nothing about quality.  Instead, Plaintiff has focused on the price of each party's clothing, stating that its reputation is "tarnishe[d]" because Defendant's products sell at "low prices."  (Pl. Opp'n to Def. Mot. at 21.)  Although the parties dispute the prices associated with the items in question, neither party has submitted evidence sufficient to support

its position.

Plaintiff has not given the Court the actual prices of its individual products.  Plaintiff asserts that the average price of Plaintiff's products is "about $60."  (Graham Decl. ¶ 28.)

Defendant has not given the Court the actual prices of its individual products.  Defendant had provided only an article that reported that the prices for clothing in the Pride Collection ranged from $9.99 to $69.99.  (Saunders Decl., Ex. 120 at 3, ECF No. 68-5.)

The Court cannot determine, from the average cost of Plaintiff's products and the price range of Defendant's products in the Pride Collection, whether the allegedly infringing products were sold at lower prices than Plaintiff's.  The parties need to substantiate whether Defendant's products are of such low quality, at such low prices, as to jeopardize Plaintiff's reputation.

Therefore, the respective qualities of each party's products is a question of fact.

### h.  Consumer Sophistication

The more sophisticated the average consumer of a product, the less likely it is that similarities in marks will result in confusion about the source of the product.  *Bristol–Myers Squibb Co. v. McNeil–P.P.C., Inc.*, 973 F.2d 1033, 1046 (2d Cir. 1992).  For this factor, courts "consider[] the general impression of the ordinary purchaser, buying under the normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of [products]."  *Lopez*, 883 F. Supp. 2d at 424 (quoting *Star Indus.*, 412 F.3d at 390).

Both parties sell casual clothing.  (*See* Def. Rule 56.1 Statement ¶¶ 2, 3.)  Shopping for casual clothing does not require a heightened degree of consumer sophistication.  *Lopez*, 883 F. Supp. 2d at 424.

Defendant asserts that consumers of items in the Pride Collection are interested in the

social purpose furthered by Defendant's products, and are thus "likely to be discerning and thoughtful in making their purchase decisions." (*See* Kalipeni Decl. ¶ 17.)

Plaintiff disputes that Defendant's consumers are discerning and thoughtful. It asserts that consumers purchase Defendant's products because of the products' "low price[s]." (Graham Decl. ¶ 28.) In support of this contention, Plaintiff offers evidence that Defendant's "Short Top with Printed Design" with words "Stay True Stay You" sold for $9.99 ($3.99 on sale). (*Id.*)

There is a genuine dispute of material fact as to this factor.

### i. Balancing the Factors

Based on an analysis of the *Polaroid* factors, a trier of fact could reasonably conclude that there is a likelihood of confusion between the marks. For this reason, Defendant's first argument in support of its Motion for Summary Judgment fails.

## III. Fair Use

Defendant asserts that the use of "Stay True Stay You" was descriptive fair use. Even if a defendant's conduct would otherwise constitute trademark infringement or unfair competition, fair use provides an absolute defense to liability. *See Cosmetically Sealed Indus.*, 125 F.3d at 30. To succeed on a claim of fair use, a defendant must prove three things: that the use was made "(1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *Kelly-Brown v. Winfrey*, 717 F.3d 295, 308 (2d Cir. 2013). The Court addresses each in turn.

### a. Non-Trademark Use

A defendant uses a term "as a mark" when it uses the term "as a symbol to attract public attention" or to identify the product's source. *Tiffany & Co.*, 971 F.3d at 92 (quoting *Kelly-Brown*, 717 F.3d at 306). Courts ask where the term appeared: on the product itself, on its packaging, or in any other promotional materials related to the product. *Cosmetically Sealed*

*Indus.*, 125 F.3d at 31.  Courts also consider "the degree to which 'defendants were trying to create, through repetition . . . a[n] association between [themselves] and the [mark].'" *Tiffany & Co.*, 971 F.3d at 92 (alterations in original) (quoting *Kelly-Brown*, 717 F.3d at 306).  The prominent display of the defendant's own mark supports a finding that the defendant was not using the term "as a mark." *See Car-Freshner Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 270 (2d Cir. 1995) (explaining that a defendant's display of its own mark on a tree-shaped car freshener suggested that the product's allegedly infringing shape was used other than as a mark).

Defendant did not use "Stay You" alone; it used the four-word phrase "Stay True Stay You."  Although those words appeared on the products itself and in at least one window display (Graham Decl. ¶ 17), the source of Defendant's products is clearly identified by the "prominent display" of Defendant's own name on hangtags. *Cosmetically Sealed Indus.*, 125 F.3d at 30; (Kalipeni Decl. ¶ 13).

Defendant used "Stay True Stay You" in a limited collection that ran for one month. (Kalipeni Decl. ¶ 6.)  The brevity of Defendant's use does not suggest the type of repetition that would "forge[] an association in the minds of consumers" between the defendant and the mark. *See Kelly-Brown*, 717 F.3d at 309 (finding that repetition of a phrase, through various forms of media including a magazine cover, an event, social media, and an online video, suggested that defendants were trying to create an association between the mark and the defendants).

For the foregoing reasons, Defendant did not use the two-word phrase "Stay You" as a mark.

### b.  Descriptive Use

To determine whether the use of a mark is descriptive, courts consider whether the mark describes 1) a characteristic of the product, or 2) an action consumers perform when using the

product. *Compare Cosmetically Sealed Indus.*, 125 F.3d at 30 (finding "Seal it with a Kiss!!" to

be descriptive where consumers were encouraged to kiss a postcard while wearing defendant's

lipstick), *with EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56,

65 (2d Cir. 2000) (finding that the slogan "Swing Swing Swing" for golf clubs was not

descriptive because golfers "swing" their products and do not "swing swing swing" them).

 Defendant argues that the use of "Stay True Stay You" was descriptive because "H&M

used that phrase as a social message of the Pride movement."  (Def. Mem. at 12.)  Although

Defendant looks to *Kelly-Brown* to support its argument, *Kelly-Brown* supports Plaintiff's

position that Defendant's use was *not* descriptive.

 In *Kelly-Brown*, plaintiff, the owner of a motivational services business called Own Your

Power Communications, Inc., sued Oprah Winfrey and others, who had produced a magazine,

event, and website employing the phrase "Own Your Power."  717 F.3d at 298.  There,

defendants argued that the use of the phrase on the magazine's cover described its contents,

"served as an exhortation for readers to take action to own their power, and described a desired

benefit of reading the [m]agazine [i]ssue."  *Id.* at 311.  The Second Circuit disagreed with

defendants' argument, and found that "Own Your Power" did not describe the contents of the

magazine; there were no articles providing "specific advice regarding how a reader can follow in

the footsteps of any of the[] individuals [on the 2010 O Power List], nor [did] it provide advice

regarding how a reader can become more powerful in general."  *Id.* at 312.

 Here, similarly, "Stay True Stay You" does not describe a characteristic of the allegedly

infringing clothing, such as the softness of its fabric, nor does it describe an action Defendant

hopes consumers will take using its product, such as wearing the clothing.

 It is Defendant's burden to show that its use of the phrase "Stay True Stay You" was

descriptive.  *See id.*  It has not made that showing.

### c.  Good Faith

The final element of a fair use defense is a showing that the use was made in good faith. The focus of the inquiry is whether a defendant, in adopting the mark, intended to capitalize on the plaintiff's goodwill by creating confusion between the products.  *Id.*  The focus of this inquiry is the same as that for the sixth *Polaroid* factor.  *EMI Catalogue P'ship*, 228 F.3d at 66.

As stated above, Defendant has offered sufficient evidence that it did not use the mark with an intent to capitalize on Plaintiff's goodwill by creating confusion.  *See supra* Part II.f. Therefore, Defendant acted in good faith.

### d.  Assessment of Defendant's Fair Use Affirmative Defense

Because Defendant has not met all three elements of fair use, it is not entitled to summary judgment as a matter of law pursuant to the affirmative defense of fair use.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is DENIED.  The parties shall, by July 8, 2022, submit to the Court a joint pretrial order, which must comply with the Court's Individual Rules and Practices.

SO ORDERED.

Dated: New York, New York
June 15, 2022

_____/s/ Kimba M. Wood_____
KIMBA M. WOOD
United States District Judge