UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STAY YOU, LLC, <br><br> Plaintiff, <br><br> v. <br><br> H&M HENNES & MAURITZ LP, <br><br> Defendant. | Civil Action No. 1:20-cv-01396-KMW-KNF |

## MEMORANDUM OF LAW IN SUPPORT OF H&M HENNES & MAURITZ LP'S RESPONSE TO PLAINTIFF'S MOTION *IN LIMINE*

Darren W. Saunders
dsaunders@peroffsaunders.com
Mark I. Peroff
mark.peroff@peroffsaunders.com
Jason H. Kasner
jkasner@peroffsaunders.com
PEROFF SAUNDERS P.C.
745 5th Avenue | Suite 500
New York, NY 10151
Tel: 646.898.2030

*Attorneys for Defendant*
*H&M Hennes & Mauritz L.P*.

**TABLE OF CONTENTS**

*I.* **INTRODUCTION**..................................................................................................*1*

*II.* **ARGUMENT**......................................................................................................*1*

   A.   Evidence of Extensive Third-Party Use of a Trademark Is Relevant and Admissible..1

      1.   Extensive Third-Party Use of a Trademark Demonstrates That the Mark Is Weak or Does Not Function as an Indicator of Source ..................................................................1

      2.   Evidence That Plaintiff's Mark Has Been Used by Numerous Third Parties Is Admissible To Show That the Mark Is Weak or Unenforceable..........................................3

   B.   The Definition of "Stay You" in the Urban Dictionary Is Relevant and Admissible ....4

   C.   Public Government Records Are Relevant and Admissible To Show that the U.S. Patent and Trademark Office Found That "Stay True Stay You" was Found Confusingly Similar to any Registered Trademarks......................................................................................5

   D.   Defendant's Former Vice President of US Marketing Should Be Permitted to Testify 7

*III.* **CONCLUSION**...................................................................................................*8*

## TABLE OF AUTHORITIES

**Cases**                                                                                                           **Pages**

*Birmingham v. Mizuno USA, Inc.,*
No. 5:09-CV-0566 GTS GHL, 2011 WL 1299356 (N.D.N.Y. Mar. 31, 2011)……….…..………4

*Boone v. Jackson, No. 03 CIV. 8661 (GBD),*
2005 WL 1560511 (S.D.N.Y. July 1, 2005),
*aff'd on other grounds,* 206 F. App'x 30 (2d Cir. 2006)……………………………….……….4

*Cullman Ventures, Inc. v. Columbian Art Works, Inc.,*
     717 F.Supp. 96 (S.D.N.Y.1989)……………………………………………………………..6

*Giggle, Inc. v. netFocal, Inc.,*
     856 F. Supp. 2d 625 (S.D.N.Y. 2012)………………………………………….………1

*Gucci v. Gucci Shops, Inc.,*
     688 F.Supp. 916 (S.D.N.Y.1988)……………………………………………………………6

*Lane v. Knowles-Carter,* No.
14 CIV. 6798 PAE, 2015 WL 6395940, (S.D.N.Y. Oct. 21, 2015)………….……………..…..4

*LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.,*
209 F. Supp. 3d 612 (S.D.N.Y. 2016), *aff'd sub nom.*
*LVL XIII Brands, Inc. v. Louis Vuitton Malletier SA,* 720 F. App'x 24 (2d Cir. 2017*)*………...….3

*Murphy Door Bed Co. v. Interior Sleep Sys., Inc.,*
     874 F.2d 95 (2d Cir. 1989)……………………………………………………………..6

*Nabisco v. Warner–Lambert Co.*,
     32 F.Supp.2d 690 (S.D.N.Y.1999)……………………………………………...…2

*Patsy's Italian Rest., Inc. v. Banas*,
     508 F. Supp. 2d 194 (E.D.N.Y. 2007)……………………………………………………6

*Plus Prod. v. Plus Disc. Foods, Inc.*,
     722 F.2d 999 (2d Cir. 1983)………………………..…………………………2

*RiseandShine Corp. v. PepsiCo, Inc.*,
     41 F.4th 112 (2d Cir. 2022)……………………………………………..………2,3

*Rd. Dawgs Motorcycle Club of the U.S., Inc. v. Cuse Rd. Dawgs, Inc.*,
679 F. Supp. 2d 259 (N.D.N.Y. 2009)………………………………………………..…5

*Streetwise Maps, Inc. v. VanDam, Inc.*,
     159 F.3d 739 (2d Cir. 1998)……………………………………………………2

*Syntex Lab'ys, Inc. v. Norwich Pharmacal Co.,*
    437 F.2d 566, 569 (2d Cir. 1971)……………………………………………………….6

*Time, Inc. v. Petersen Publ'g Co.,*
    173 F.3d 113 (2d Cir.1999).……………………………………………………..….…1,2

**SECONDARY SOURCES**

*J. Thomas McCarthy, McCarthy On Trademarks and Unfair Competition*
    § 11:85  (4th ed. 2001).………………………………………………………………......…..1

**STATUTES**

15 U.S.C. § 1052(d)……………………………………………………………………….6

Defendant H&M Hennes & Mauritz LP ("H&M") respectfully submits this memorandum in opposition to Plaintiff Stay You LLC's ("Plaintiff") Motion *in Limine*.

I.   INTRODUCTION

Plaintiff moves *in limine* to preclude use at trial and admission into evidence (1) exhibits that demonstrate third-party use of "Stay You" and "Stay True Stay You"; (2) the definition of "Stay You" in the Urban Dictionary; (3) certain records of the US Patent and Trademark Office; and (4) the substitution of a live witness at trial for a witness who will be unavailable to testify. As explained below, Defendant's evidence of extensive third-party use is highly relevant to the jury's determination of the strength (or weakness) of the Plaintiff's mark and is admissible; the Urban Dictionary definition of "Stay You" is strong evidence that the phrase is in common usage and therefore also diminishes the strength of Plaintiff's mark; the official records of the US Patent and Trademark Office demonstrate that "Stay True Stay You" is not confusingly similar to "Stay You" for clothing and are admissible; and that Defendant should be permitted to present a live witness at trial.  Accordingly, Plaintiff's motion *in limine* should be denied in its entirety.

II.   ARGUMENT
   A.   **Evidence of Extensive Third-Party Use of a Trademark Is Relevant and Admissible**

   1.   **Extensive Third-Party Use of a Trademark Demonstrates That the Mark Is Weak or Does Not Function as an Indicator of Source**

It is well settled that extensive use by third parties of a trademark evidences that the mark is weak in strength.  *J. Thomas McCarthy, McCarthy On Trademarks and Unfair Competition* § 11:85, at 11-163 (4th ed. 2001). ("[I]n a 'crowded' field of similar marks, each member of the crowd, is relatively 'weak' in its ability to prevent use by others in a crowd."); *Giggle, Inc. v. netFocal, Inc.*, 856 F. Supp. 2d 625, 632 (S.D.N.Y. 2012) ("When reliable, such evidence of third-party use of a mark is very persuasive in proving lack of secondary meaning.") *See also, Time,*

1

*Inc. v. Petersen Publ'g Co.,* 173 F.3d 113, 118 (2d Cir.1999) (directing courts to look at "[t]he use of part or all of the mark by third parties" since third-party use "weakens its overall strength") *Nabisco v. Warner–Lambert Co.*, 32 F.Supp.2d 690, at 698 (S.D.N.Y.1999) (noting that "extensive use" of the term "Ice" by third parties in the confections field "considerably weaken[ed]" the "Ice Breakers" mark)..  In some instances, common use in the same field is so overwhelming that Plaintiff's mark fails to function as a unique indicator of source, such that the mark is invalid or unenforceable.  *RiseandShine Corp. v. PepsiCo, Inc.*, 41 F.4th 112, 122 (2d Cir. 2022)*;* (Finding "RISE" inherently weak and incapable of functioning as a mark for caffeinated beverages, noting, "Extensive third-party usage of a mark in related products generally weighs against a finding that a trademark is strong*. . .* This is especially true where both the plaintiff's product and the other products use the word to signify the same ordinary meaning.") (internal sites omitted); *See also, Plus Prod. v. Plus Disc. Foods, Inc.*, 722 F.2d 999, 1005 (2d Cir. 1983); *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 744 (2d Cir. 1998)**.**

The strength of the plaintiff's mark is a significant factor in the likelihood of confusion analysis because it defines the scope of protection to which the mark is entitled.  Weak trademarks are accorded a narrow scope of protection as against other uses. *RiseandShine Corp.* 41 F.4th 112 at 122.  The reason is, if there is only a limited segment of consumers who are familiar with the mark, another's use of the mark is unlikely to cause confusion among an appreciable number of consumers.  Put simply, if a consumer is unaware of the plaintiff's mark, they cannot be confused as to the source of the defendant's product.  The consumer must know of the plaintiff's mark and associate it with a single source in order for there to be any possibility of confusing another's product with that of the plaintiff.  This is indeed the reason that courts examine the strength of the plaintiff's mark as the first *Polaroid* factor, as it sets the stage for determining whether, in the view of the other *Polaroid* factors, an appreciable segment of the relevant group of consumers is

likely to be confused.

It is up to the jury to determine the strength of the plaintiff's mark based on the totality of the evidence, including third-party uses of the plaintiff's mark on similar goods.

### 2.     Evidence That Plaintiff's Mark Has Been Used by Numerous Third Parties Is Admissible To Show That the Mark Is Weak or Unenforceable

Defendant H&M adduced substantial evidence of extensive third-party use of the phrase "Stay You" by other casual clothing companies. The Court so found on H&M's motion for summary judgment (DKT. 78 at 6). As the Court found, Defendant's evidence of extensive third-party use of "Stay You" "undermines the strength of Plaintiff's mark." *Id.*

Contrary to Plaintiff's arguments, Defendant's evidence of extensive third-party use of "Stay You" is highly relevant and probative to the weakness of Plaintiff's mark, and is therefore admissible. Indeed, courts routinely admit evidence such as that of Defendant's, including images of third-party products from the internet, to prove the degree of strength of the Plaintiff's mark. *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 665 (S.D.N.Y. 2016), *aff'd sub nom. LVL XIII Brands, Inc. v. Louis Vuitton Malletier SA*, 720 F. App'x 24 (2d Cir. 2017); *See also, RiseandShine Corp.* 41 F.4th 112 at 122-4.

Further, although Plaintiff claims these third-party uses were "too *de minimus*" (DKT. 95 at 9), these examples of other uses included major brands such as adidas, Old Navy and Hollister. Plaintiff's argument goes to the weight of the evidence, not the admissibility of the same.

Plaintiff also argues that the "huge number of exhibits may give it a sense of importance" in contending erroneously that the evidence is irrelevant and prejudicial. (DKT. 95 at 2). But, the large number of exhibits is precisely the point of providing evidence of extensive third-party use – only a few examples would not demonstrate that the other companies' uses were extensive.

3

In sum, the evidence of third-party use is admissible and therefore Plaintiff's motion to preclude it should be denied.

**B.     The Definition of "Stay You" in the Urban Dictionary Is Relevant and Admissible**

Plaintiff baldly asserts that "(a)ll references to the Urban Dictionary should be excluded at trial." (DKT 95 at 5). Plaintiff's lack of factual basis or legal authority for its claim is telling, since information from online dictionary sources including Urban Dictionary *specifically* are highly relevant and admissible in intellectual property cases.  These sources are especially probative of whether the public views a phrase as a common phrase and courts in this Circuit have admitted and considered material from the Urban Dictionary.  *Lane v. Knowles-Carter,* No. 14 CIV. 6798 PAE, 2015 WL 6395940, at *6 (S.D.N.Y. Oct. 21, 2015) ("'The use in music or other parlance of these two letters is hardly unusual. "XOXO" is commonly used in society, including in letters and electronic communications, to signify "kisses and hugs." *See,* . . . Urban Dictionary, http://www.urbandictionary.com/define.php?term=xoxo (last visited Oct. 21, 2015); *Boone v. Jackson*, No. 03 CIV. 8661 (GBD), 2005 WL 1560511, at *4 (S.D.N.Y. July 1, 2005), *aff'd on other grounds,* 206 F. App'x 30 (2d Cir. 2006) ("The appearance of the phrase "holla back" in the Urban Dictionary further supports defendant's contention that the phrase is common and therefore unprotectable").

In trademark cases particularly, evidence from the Urban Dictionary is probative of the strength of the mark factor under the *Polaroid* test for determining likelihood of confusion in this Circuit.  *See, Birmingham v. Mizuno USA, Inc.*, No. 5:09-CV-0566 GTS GHL, 2011 WL 1299356, at *7 (N.D.N.Y. Mar. 31, 2011) – (Urban Dictionary definition used in determining strength of mark *Polaroid* factor - "The Court takes judicial notice of the fact that the term 'soft hands' is sometimes used to refer to (1) a tennis player with a good feel at the net, (2) a hockey player who

4

is skilled at the technique of deceiving an opponent by moving left to right or vice versa, (3) a golfer who passively turns over his hands to release the club at the right moment, or (4) a football receiver who catches the football with relaxed hands. *See* . . . 'Urban Dictionary,' www.urbandictionary.com/define.php?term=softhands [last visited Nov. 18, 2010]); *See also, Rd. Dawgs Motorcycle Club of the U.S., Inc. v. Cuse Rd. Dawgs, Inc.*, 679 F. Supp. 2d 259, 276 (N.D.N.Y. 2009) ("Pursuant to Fed.R.Evid. 201, the Court takes judicial notice of the fact that other slang dictionaries define 'road dawg' as (1) 'a term of endearment among friends,' (2) 'a friend one spends a great deal of time with,' or (3) a 'running partner.' . . . UrbanDictionary.com, http://www.urbandictionary.com/define.php? term =road+dawgs [last visited Sept. 21, 2009]).

The strength of Plaintiff's mark is one of the most relevant *Polaroid* factors in this matter (*See,* DKT 78, *Order at 6* – "Overall, there is a genuine dispute of material fact as to the strength of Plaintiff's mark."). Defendant should not be precluded from introducing highly probative evidence from the Urban Dictionary that demonstrates the weakness of Plaintiff's mark.

### C.  Public Government Records Are Relevant and Admissible To Show that the U.S. Patent and Trademark Office Found That "Stay True Stay You" was Found Confusingly Similar to any Registered Trademarks

H&M recently became aware that the U.S Patent and Trademark Office ("USPTO") reviewed and published a trademark application for the mark STAY TRUE STAY YOU by a third-party for use in connection with clothing in Class 25, finding no similar marks that would preclude registration. (True and correct copies of US TM Application No. 90/858,240 for STAY TRUE STAY YOU, the USPTO Notice of Publication for that application and the Official USPTO Gazette entry for that mark are all annexed hereto for the Court's reference as Exhibit A). This is significant because the USPTO conducts a search as part of the application process to determine whether there are any marks that conflict with the applied-for mark. In other words, any marks that are determined to be so similar to a registered mark as to be likely to cause

confusion under the Lanham act, Section 2(d), 15 U.S.C. § 1052(d).  Plaintiff's mark was not cited by the USPTO as a conflicting mark to STAY TRUE STAY YOU, and the application was approved for publication.

Plaintiff states that the public records of the USPTO "evidence nothing more than a filing has been made claiming the mark." (DKT 95 at 9).  However, this is not true.  The examination process is complete and the USPTO found no conflicting marks for STAY TRUE STAY YOU for clothing.  The courts have recognized and commented that the USPTO possesses expertise in determining likelihood of confusion between marks.  Therefore, courts in this Circuit have accorded determinations of the USPTO with great deference.  *Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194, 207 (E.D.N.Y. 2007) ("(D)istrict courts within the Second Circuit have recognized the great deference owed to decisions by the PTO.")  *See Cullman Ventures, Inc. v. Columbian Art Works, Inc.,* 717 F.Supp. 96, 120 (S.D.N.Y.1989), *disagreed with on other grounds, Car–Freshner Corp. v. S.C. Johnson & Son, Inc.,* 70 F.3d 267, 269 n. 1 (2d Cir.1995) (stating that "decision by the PTO is entitled to great weight."); *Gucci v. Gucci Shops, Inc.,* 688 F.Supp. 916, 927 (S.D.N.Y.1988) (stating that the PTO's refusal is entitled to substantial weight) (citing *Syntex Labs., Inc. v. Norwich Pharmacal Co.,* 437 F.2d 566, 569 (2d Cir.1971)). *See also, Murphy Door Bed Co. v. Interior Sleep Sys., Inc.*, 874 F.2d 95, 101 (2d Cir. 1989) ("First, the decision of the PTO, and certainly the TTAB, is to be accorded great weight); *Syntex Lab'ys, Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566, 569 (2d Cir. 1971) (US Patent and Trademark Office determination that a mark is not entitled to registration is entitled to "great weight.").

Plaintiff contends that "the documents appear hearsay" and that they are "completely irrelevant." (DKT. 95 at 9).  However, the USPTO documents are government records that are prepared in the ordinary course of business by the USPTO which reflect its determination.  They

6

are reliable United States government record, and are not hearsay. Moreover, the documents are highly relevant to the issues of similarity of the marks and likelihood of confusion. Therefore, they are admissible.

### D. Defendant's Former Vice President of US Marketing Should Be Permitted to Testify

Defendant's witness in discovery, Joshua Kalipeni, is no longer with H&M and is likely unavailable to testify at trial. Defendant therefore proposes to call Mario Mareno as a live witness. Mr. Moreno was Vice President of U.S. Marketing in H&M's New York office during the relevant time period. As VP of U.S. Marketing, Mr. Moreno was responsible for and managed H&M's product campaigns in the United States, including the 2019 Pride Campaign.

As Plaintiff acknowledges, Mr. Kalipeni "directly interfaced with marketing people," (DKT. 95 at 10) and this includes Mr. Moreno. Contrary to Plaintiff's speculation, Mr. Moreno has direct, first-hand knowledge of the H&M 2019 Pride Campaign and is therefore a competent witness.

Last, Plaintiff states that "Mr. Kalipeni never identified Mr. Moreno. . ." at his deposition (DKT 95 at 10). However, Mr. Kalipeni was not asked at his deposition to whom he directly reported in H&M's New York office, nor was he asked who his supervisors were.

H&M will make Mr. Moreno available for a deposition before trial and, therefore, Plaintiff will incur no prejudice by his testifying at trial. H&M, however, would be prejudiced by not having a live witness speak to the jury at trial. Accordingly, H&M respectfully requests that the Court permit Mr. Moreno to testify as a witness at trial.

## III. CONCLUSION

For the foregoing reasons, H&M respectfully requests the Court to deny Plaintiff's motions *in limine* in all respects.

Respectfully submitted,

Dated: New York, New York  
October 6, 2022

*/s/ Darren W. Saunders*  
Darren W. Saunders